## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **DAVID TOM,** individually and on behalf of all others similarly situated, | Case No. 8:24-cv-01320-SDM-SPF |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | |
| **FORBES & YORK INSURANCE LLC D/B/A MEDADVANTAGE PARTNERS** and **THE ASSURANCE PIVOT, LLC D/B/A SKYBRIDGE LEADS,** | |
| *Defendant.* | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FORBES & YORK INSURANCE LLC'S MOTION TO DISMISS

1

## I.    INTRODUCTION

Defendant Forbes & York Insurance LLC, which does business as MedAdvantage Partners, (Forbes or Defendant)'s motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate Forbes' vicarious liability for the calls at issue. Specifically, Plaintiff has pled that he received multiple calls to his numbers from various "spoofed" caller IDs throughout March of 2024 which were placed by the defaulted co-defendant in this case, The Assurance Pivot, LLC, who then transferred the call to Defendant Forbes. Forbes claims, at the motion to dismiss stage, that it had absolutely nothing to do with the calls Plaintiff received, this despite the fact that the Plaintiff provided a different telephone number not on the Do Not Call Registry in order to investigate the caller, received a call on *that* number shortly after he provided it, and was transferred to "Febreze," a "licensed agent" with "MedAdvantage Partners," which is a DBA for Defendant Forbes. At the pleadings stage, such allegations are plainly sufficient to give rise to an inference of liability, including Forbes' vicarious liability for calls it hired The Assurance Pivot to place on its behalf.

As so many other courts have done in other TCPA cases involving vicarious liability and unlawful calls to cell phones on the Do Not Call Registry, this case should be allowed to proceed to discovery.

2

## II.   BACKGROUND

The Complaint in this matter was filed on May 2, 2024 against the moving Defendant Forbes. (ECF No. 1). After transferring this matter to the Middle District of Florida, where Defendant Forbes is located, Forbes filed an amended motion to dismiss in which it abandoned its motion on jurisdictional grounds but rather attempts a 12(b)(6) challenge on the specious basis that the Plaintiff has inadequately pled the Defendant's connection to the calls. This response follows, in which Plaintiff shows why he has stated a *prima facie* case for violations of the TCPA that must be permitted to proceed to discovery, including third party discovery on Assurance's telephone provider, to better ascertain what happened and pinpoint the exact number of calls Assurance placed on behalf of Defendant Forbes.

## III.   LEGAL STANDARD

The legal standard for a motion to dismiss under Rule 12(b)(6) is well-established before this Court. Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is

entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *See, e.g.*, *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## IV.   ARGUMENT

A.   *Plaintiff pleads sufficient facts, including spatial and temporal proximity, allowing this Court to draw the logical inference that Forbes hired Assurance to place the illegal calls at issue.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls with sufficient specificity to give rise to the inference of direct or vicarious

liability. He has done so because he has pled facts, including spatial and temporal proximity, as well as information obtained from a confidential third-party informant with knowledge of Defendants' business operations, which sufficiently prove at the pleadings stage that Defendant Forbes hired Assurance to place the calls, which Forbes then used for its benefit in attempting to sell the Plaintiff insurance. (Compl. ¶ 29–38.). The Plaintiff has clearly alleged that Forbes is liable for the conduct at issue and has made allegations that support the fact that Assurance made those calls on Forbes' behalf as part of an *en masse* campaign, including based on the information provided to the Plaintiff by an individual with knowledge of Assurance's business operations and calling conduct. (Compl. ¶ 47). It should also be noted that Assurance has defaulted in this litigation, which such silence speaks volumes.

Defendant Forbes unjustifiably leaps to the conclusion that, because the Plaintiff was only able to affirmatively *identify* Forbes on the singular call he authorized–the one that was placed to his number not on the Do Not Call Registry– it was not responsible for the unauthorized calls as well. That simply does not follow. There is no "affirmative identification" requirement or even an identification requirement whatsoever in the TCPA. Were that the case, any bad actor (as here) could simply call people incessantly using fake names and caller IDs, only identify themselves when about to sell the called party something, and

disclaim responsibility for the other calls, despite having placed them, and despite other indicia evidencing that the calls originated from the same place. In fact, the Plaintiff providing his alternative "authorized number," and thereafter getting a call from Forbes looking to continue the call and sell him the exact same thing pitched during the calls to the unauthorized number, proves that the unauthorized calls were placed by Assurance on Forbes' behalf. Forbes' contention otherwise stretches the boundaries of logic and common sense.

Surely, Defendant had to obtain the Plaintiff's authorized number from *somewhere* as an alternative number for the Plaintiff, as well as the Plaintiff's information. It then would have had to dial the number to continue the sales pitch. Although this fact is not in the complaint, the alternative number is not associated with the Plaintiff. The Defendant clearly was able to associate that number with the Plaintiff because Assurance passed this information along to Forbes *during* the illegal calls that Assurance placed because the Plaintiff provided this information *during the illegal call*. The Plaintiff has alleged as much, specifically, that Defendants "programmed or instructed programming their autodialer to dial numbers randomly or sequentially and only verify, or "scrub," such numbers for inclusion on the Do Not Call Registry after the illegal call is placed." (Compl. ¶ 34). It is for this reason that Mr. Tom provided the authorized number during a call with an agent on March 14 and thereafter got a call on the authorized number he

6

provided to the agent, from the agent. (Compl. ¶ 35, 36). Thus, not only the information on the call, but also the spatial and temporal proximity between them, gives credence to the Plaintiff's well-pled and plausible allegation that Defendant hired Assurance to place the calls on its behalf and transfer only those that met its criteria. (Compl. ¶ 53–56).

Furthermore, the Defendant's motion misstates the Plaintiff's burden at the pleadings stage entirely. Based on the facts pled in the notice-pleading of the Plaintiff's complaint, as further bolstered by additional evidence in the Plaintiff's possession, it is fair for this Court to infer that Forbes is liable for the conduct alleged to permit this matter to proceed to discovery. The fact that Forbes was affirmatively identified during one of the calls which came after a call on which the Plaintiff provided a unique callback number to identify the caller is alone sufficient to at least entitle the Plaintiff to discovery, minimally, as to what other calls the Defendant made and how the Defendant came to get the Plaintiff's number and call it to continue the sales pitch. Discovery can unquestionably extend to all the calls Plaintiff received bearing the same temporal and spatial indicia that indicate, or at least reasonably infer, they came from the same place.

Moreover, this Court should not hold that a defendant had no involvement and is not liable for a call it admits was knowingly transferred to it by a company it hired to generate leads by making telemarketing calls. The Plaintiff has pled more

than adequate facts demonstrating that such a relationship exists, thus permitting the Plaintiff to be entitled to discovery on this point and into the universe of calls placed to him. Telephone records do not lie, and a subpoena to Assurance's telephone company will ultimately set the record straight as to which calls the Plaintiff received from Assurance as part of its relationship with the Defendant.

Neither the Defendant's general denials here nor citation to off-base case law suffice to show that there is some question as to whether or not Forbes may be liable for at least some of the calling conduct alleged. The Defendant, in essence, adopts in its motion the classic "I didn't do it" defense, but styles it instead as an attack on the Plaintiff's pleading. This Court cannot credit the Defendant's simple denial of involvement, particularly because the Defendant's very own contentions themselves are contradictory. Moreover, even if that was the standard (which it is not), it doesn't matter that the callers used spoofed caller IDs and fake names, nor do differences in call outcomes at all matter for pleadings purposes. The calls were evidently placed by the same entity. During one of the calls with identical indicia, the Plaintiff provided his authorized number to an agent and thereafter got a call from the agent at the authorized number. That links at least the call on which the Plaintiff provided his number and the call to his authorized number. The third-party informant and the other spatial, temporal, and other proximity thereafter link the remaining unauthorized calls, at least at the pleadings stage.

8

Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly not pled sufficient facts demonstrating liability. But that's a "red herring" that begs the question "who did, then?" and begs the question as to how the authorized call, which flowed from the unauthorized calls, ended up directly transferred to and how Plaintiff interacted with Forbes' employees. *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Of course, the answer here is boring and simple: Defendant directed Assurance to use a so-called TCPA DNC "Litigaiton Firewall" to screen out telephone numbers of individuals on the Registry and ensure that only numbers not on the Registry were transferred to agents naming the Defendant. This was done to avoid the ill will arising from the Defendant being directly associated with calls to numbers on the Registry and also provide plausible deniability (as here) when the source of the illegal calls is thereafter identified.

Requiring a putative TCPA plaintiff to allege more than basic facts giving rise to liability, such as requiring the entity be disclosed by name at the outset of an illegal telemarketing call or pleading intricate details linking calls, which were

explicitly designed to be as difficult to trace, as the Defendant seems to require, would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. Indeed, although identification of a caller is a legal requirement, neither Forbes, Assurance, nor the vast majority of illegal telemarketers abide by it and instead use fake, generic names on the initial sales pitch because disclosing their true identity at the outset would cause bad will for their brand and generate a multitude of public consumer complaints. In litigation that affirmatively identifies them as the bad actors, like here, they then play dumb and claim that they have no connection with such falsely, and illegally, named entities and callers.

Other courts have rejected nearly identical tactics. For example, in *Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021), this *very court* stated in a case on all fours with this one:

> Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.
>
> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter

and argue the issue at the dispositive motion stage.

Taking all factual inferences in the Plaintiff's favor, as the Court must do now, the

Plaintiff's allegations are sufficient. As Judge St. Eve, prior to being appointed to

the Seventh Circuit Court of Appeals, held in a TCPA case denying a similar

motion to dismiss:

> Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been." . . . Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogther" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation."
>
> The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.
>
> *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (cleaned

up). The same reasonable inference can be made here, as Mr. Tom received a

variety of calls that used the same exact scripting on behalf of the Defendant and

has alleged similar spatial and temporal proximity, including later identifying the

Defendant through the call to the number he provided.

The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

Discovery will also permit the Plaintiff to uncover any additional third parties which *may* have been involved in the calls and argue as to the respective liability between themselves and Defendants. At the very least, this Court should nevertheless conclude that the facts pled here give rise to the inference of some agency relationship and permit discovery. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."). Nor is this conclusion rendered at all different because the Plaintiff pled that Defendant hired Assurance. The District of Maryland denied a similar motion in a TCPA case in *Jones v. Mut. of Omaha Ins. Co.*, Civil Action No. ELH-22-905, 2022 U.S. Dist. LEXIS 203313

(D. Md. Nov. 7, 2022) (cleaned up), holding:

> As noted, pursuant to Rule 12(b)(6), Mutual of Omaha contends that plaintiff fails to state a claim because she does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue. Although Mutual of Omaha would not be directly liable for the calls, it may be vicariously liable if an agency relationship existed between the defendant and the third party. At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability.

> Plaintiff has made a prima facie showing of an agency relationship based on actual authority . . . plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. *Id.* ¶ 26. . . . .

> At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather, evidence of Mutual of Omaha's "'*right* to control' the campaign will suffice." Viewing the allegations in the light most favorable to plaintiff, Jones has sufficiently alleged that Mutual of Omaha is vicariously liable based on an agency theory.

This case is nothing like the cases cited by the Defendant. *In Hinesely v. Ensurem II, LLC*, U.S. Dist. LEXIS 161861 (N.D. Fla. Sep. 11, 2023), the plaintiff there relied *solely* on the similarity between caller IDs to support his allegation that all ten calls came from the same place. *Id.* at *2–*3. However, the plaintiff there, unlike the plaintiff here, only *answered one call* and made no allegations as to the contents of the unanswered calls. Importantly, Court in *Hinesly* actually *permitted*

the plaintiff's claim for the one call he did answer to go forward, noting, like here, that it was "reasonable to infer that Defendant was either directly or indirectly behind the August 19 call because Plaintiff was ultimately transferred to a representative at a phone number that belonged to Defendant." *Id.* at *11.

*Bryant v. Udell & Assocs.* likewise provides little solace to the Defendant. There, the plaintiff received calls from an individual identifying themselves as calling from "Senior Life" and who then transferred the call to Mutual of Omaha. *Bryant v. Byron Udell & Assocs. Inc.*, No. 123CV00414AJTLRV, 2023 WL 5180351, at *1 (E.D. Va. Aug. 11, 2023). After discovery, Court granted a 12(b)(1) motion to dismiss as to defendant AccuQuote because the only evidence that AccuQuote placed the calls were conclusory allegations that they did so in the complaint, specifically that, "During discovery in this action, Mutual of Omaha has revealed that AccuQuote, or a vendor they retained, made th[e] pre-recorded call [to Bryant]." *Id*. at *3. This being the "extent of Plaintiff's allegations against AccuQuote," which itself left the possibility that another vendor placed the calls, Court dismissed the case. *Id.* Not so here, where the Plaintiff's information is based on a confidential informant linking Assurance to Defendant.

The only remaining TCPA-specific caselaw which the Defendant cites in support of its argument that the Plaintiff has insufficiently identified Defendant's

14

involvement is *Smith v. Direct Building Supplies*. There, similar to *Hinesely*, the Court in held as insufficient investigative efforts where the Plaintiff did not *answer* a call but rather called the caller ID *back* and was connected to the Defendant. *Smith v. Direct Building Supplies LLC*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021). Nevertheless, Court dismissed the claims without prejudice and later *rejected* a different defendant's arguments which attempted to secure a second dismissal based on this authority against plaintiff. *See Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (denying MTD).

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit discovery as necessary and reserve other determinations properly the subject of the jury.

DATED this 26th day of July, 2024.     Respectfully Submitted,

By: /s/ *Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Attorneys for Plaintiff and the putative Classes*